Good morning, your honors. May it please the court. Elizabeth Richardson Royer on behalf of the appellant, Terrence Baker. I plan to reserve two minutes for rebuttal, but I'll watch the clock. Very well. This appeal raises several issues, but this morning I hope to focus on two of them. First, the district court's failure to comply with this court's mandate from the previous appeal. And second, the Rule 32 and due process violation that occurred when the district court based Mr. Baker's 209-month sentence on a litany of facts and information about mass murders, other homicides that were marginally relevant, not disclosed prior to sentencing, and about which Mr. Baker was not able to provide his own evidence or challenge these facts in any way. Starting with the first issue, at the original sentencing, Mr. Baker received 125 months for each of the Hobbs Act counts and 84 months for the mandatory seven-year consecutive term for the 924C. This court reversed the conviction on the 924C and remanded, and this is a quote, for a reduction in sentence or a retrial on that count. So there were two options for the district court. One would have been a retrial, which the government chose not to pursue. The other was a reduction in sentence. And Mr. Baker's position is that because the custodial sentence and the term of supervisor lease, the restitution, everything was the same, the reduction in sentence that the court ordered did not occur. Let me ask something, counsel. So let's say I agree with your reading of what the district court, I mean, what the Ninth Circuit said. The government has this argument that, well, I'm not sure I totally follow what the government's argument is in terms of what was reduced or not. But let's say for a second, I agree with your reading here, but the government's argument is that the special assessment went from $300 to $200. So talk to me, I know this sounds crazy, about why they're wrong to say going from $300 to $200 is not a reduction in sentence. Okay. I think that judges speak to each other in ways that they know each other will understand. And so when the court of appeals says reduce the sentence, they're not talking about a $100 special assessment. They're talking about the sentence as we all understand that word to mean, which means the custodial sentence. I would posit that even if the term of supervised release were reduced, that still wouldn't be what the court ordered the district court to do. But the special assessment is really a stretch, respectfully. And And if the court had said vacate and remand, would your answer be different? Absolutely. This argument is based on the language of the mandate and what the mandate ordered the district court to do. If all that the court of appeal had said was we vacate the sentence and remand, then that would have been for a plenary resentencing. And I would have no issue, well, not no issue. I wouldn't have this issue about the resentencing. And you can ask whether it was proper for the court to issue the mandate that way. But the district court is required to follow it, whether it's correct or incorrect. The district court is not allowed to evaluate or make any value judgment about what the court has ordered it to do. And in this case, it did not reduce the sentence. It gave the exact same custodial sentence, the same term of supervised release. And it has to go back for the court to follow the court's mandate for that reason. So the government in this case, at resentencing, asked for 208 months. Correct. So that's an indication of what I think everyone understood maybe going into this thing. I take it if it were, I'm not trying to bide you here, but if it was 208 months, then that would be a reduction in sentence. If it were 208 months, I would not have the first argument. I would still have the second argument. But because the district court refused to go down, reduce it by even a month, I don't think that, I think that this court has to send it back because of the terms of the first mandate. I think there's a separate reason for the court to send it back, is this district judge's four-page long speech about facts and statistics and specific instances of egregious mass killings during the sentencing of my client for robbery. And this is a problem for a number of reasons. It's a problem under Rule 32 because this information was never disclosed. The judge made comments that are, you know, ripe for challenge, such as the scourge of mass killings in this country is the result of illegal firearm possession, which we have no way of knowing that that's true, but I imagine you could challenge that. The idea that mass killings are related to run-of-the-mill gang-related armed robberies in the first place is subject to challenge. But because the district judge did not provide this information to the defense before sentencing as it was required to do by Rule 32, the defense was unable to challenge it. And it's clear, and the government says, we don't know that this affected the sentence in any way. But I don't think that's a fair reading of the sentencing transcript. And I think if you look at when the speech occurs, which is immediately before imposition of the sentence, and how emotional and clearly personal, personally impacted this judge feels about firearm violence, and then he says twice that the reason he's imposing this, you know, one month less than the high end of the guidelines is for deterrence, I think it's really not a fair reading of the transcript to say that it didn't affect the sentence. So let me ask you, counsel, so I, you know, back in the day I attended a lot of sentencing here in San Diego as an AUSA, and often judges would say in a methamphetamine, that was the real hot issue back then, you know, this is a scourge on society, this is ruining generations of kids, you have to be held accountable for that. And that was said hundreds of times when I was in court. Is that also problematic, or is that different from what happened in this case? I think that's totally different. And if the district judge had said in this case, you know, armed robberies are a huge problem in this society, in this district, and I have to give a high sentence to discourage them, we wouldn't be here raising this issue. But the judge's focus on heinous crimes that really have very little, if any, relationship to what Mr. Baker did, and the length of his speech, and the vehemence with which he presented it, make this different than the run of the mill case where a judge says firearms are a problem, or drugs are a problem. This is a different situation. And this judge is making this speech repeatedly. It's clearly something that is affecting the sentencing, and Mr. Baker should have been allowed to challenge the beliefs that were based on these facts and statistics that we really have no way of knowing whether they're relevant or accurate in any way. So how do you draw the line between, I think it was the war case, where they actually even had a study from maybe the Bureau of Prisons that was cited, and the court said, well, you know, it's really for a general proposition. So if I were to say, it's no secret that today we've had a lot of surge in violent crime, we've seen these mass shootings, this is the environment we live in. That doesn't really seem to me to be distinguishably different. It's actually less objectionable than the war situation, or the one where somebody relied on a news article, for example. He's sort of painting a picture. So what's wrong with that? I think, respectfully, I think that what happened in war was, it was a much more limited thing that the judge was looking at. It was a BOP study about recidivism. And in that case, there was expert testimony about that particular defendant and his high rate of, his high risk of recidivism. And the expert essentially provided information that was cumulative, you could say, with the BOP study. And so part of the court's analysis there was to say, look, we really don't think this study was the thing that changed the sentence, and it wasn't a problem. In this case, it goes well beyond just a statement that, you know, youthful offenders have a high risk of recidivism, which really nobody would quibble with. But this, he's talking about specific, egregious crimes. He's talking about the, you know, killing of law enforcement officers. He's talking about the mass killing of children at a school. He's talking about these, these really heinous things without any proof or evidence that they're related to Mr. Baker's run-of-the-mill armed robbery of a Sprint store in any way. And that really takes this case well outside of, of the war realm. And I'll save the remainder. Oh, yes. Judge Wallace. Sometimes district court judges get into mischief because they talk too much. Being a former district judge, I can understand that. But they do make comments. Very often they make comments. Sometimes they're to help the defendant to understand what their role is. What you're saying is because he made certain statements, he wasn't following the mandate. But the district court promptly reduced the sentence on the 929C count as directed by the court. So why, why don't we say that taking it as a whole, the district court, although perhaps was overstating areas that give you some heartburn now, that he wasn't, he was following because there's evidence in the record that he was following the mandate on, on the action he did take? Well, I think when, I don't think it's fair to read the mandate as saying that the district judge had to either reduce the sentence on the 924C or retry it, which is, I think, the only reading that would make his action actually comply with the mandate. Instead, I think it has to be read as you have to either retry the 924C or reduce what is left of the sentence. And that, that's the only reading that makes sense to me. And so he did not reduce the sentence when it was 209 months before and 209 months after. Because your argument is that, and I'll give you time to rebuttal, don't worry, but your argument is that, look, the 924C count's gone. So there's nothing, there's nothing to reduce. Absolutely. It's gone. Now, if you retry it and there's a conviction, okay, then we go from there. But at this point, at this point I'm pointing to the Ninth Circuit's decision in Baker, it's, there was no 924C conviction at that point. Yes, which is why I think the government's argument that, that, the sentence for that count was reduced doesn't make sense when you read the language of the mandate. All right. Yeah, go ahead and then we'll give you a break, but we'll give you the two minutes. Thank you very much. You got it. I appreciate it. Good morning, Your Honors. May it please the Court. Jenna McCabe on behalf of the United States. Starting with the issue of the mandate, the Court did comply with this Court's mandate. It complied with the literal term of the mandate by reducing the sentence specifically with respect to the special assessment, which no one is disputing is a part of a sentence. And it also complied with the mandate in the way that Defense Counsel raises the issue of what the Ninth Circuit meant in saying reducing the sentence. Because the District Court was required to calculate the guidelines properly and it removed the entire 924C sentence being the special assessment, the consecutive term of months of imprisonment, the supervised release term. Everything that came with that 924C sentence was removed and therefore the sentence was reduced. And so the District Court was in full compliance with the mandate for those reasons. So at the end of the day, Mr. Baker ends up with the same sentence minus $100? The same total terms of months, yes. The same total term of supervised release without that other concurrent term. But the special assessment that was reduced is a portion of the sentence and therefore the sentence was... It kind of has a thumb your nose aspect to it. If you think the reduction is, okay, of course they had to take out the 924C based on the court's decision. So I'm going to reduce the sentence overall because everything's back on the table under the mandate rules. And I'm going to cut off $100. There's just something that doesn't sit right with that if you're actually saying reduce the sentence. If that is the only change that really happens. Yes, Your Honor. And I think if the Ninth Circuit and its mandate had specifically, or the opinion overall, was going into whether or not the sentence was substantively unreasonable or dealing with some sort of sentencing aspect, then it would be thumbing your nose at the court's decision. However, what the District Court was dealing with here was a remand after the firearm was suppressed. So what the Ninth Circuit had grappled with was what the evidence would be underlying the 924C count and remanded for either a retrial or reduction of sentence on those grounds. The only sentencing challenge that was brought up before this court at that time of the appeal was affirmed, which was the obstruction of justice enhancement. And so the District Court wasn't receiving the mandate and trying to violate it in any way. In fact, the District Court did discuss the mandate and how it was complying with the mandate and how it was required to recalculate the guidelines and to apply them appropriately. And so the District Court was trying to faithfully comply with the mandate and I believe that it did comply with the mandate both literally and by what the Ninth Circuit meant for it. Well, the one thing is that obviously if the mandate had required a reduction in the sentence only with respect to that reverse count, wouldn't the court have said vacated? The court had the option to vacate it, but the government had the opportunity to retry it. Well, we kind of have a two-pronged approach here. You go back to the District Court and you can retry it or you can re-sentence. So give up, they say. The government says they don't want to retry it, right? So now we're into the, well, reduce. And what I'm saying is had the court not focused on the 924C count, if that was the focus, why didn't the court say vacate? Because that would be the proper instruction, wouldn't it? That would be a proper instruction. But instead, the District Court didn't do that. It said reduce. So you have to give some meaning to the difference between reduce and vacate. That's something I'd be interested in the government's position on. The government's position would be that the sentence and reduce the sentence, which is the mandate's words, meant the overall sentence. And what's implied there is that the court, should the District Court not be dealing with a retrial of the 924C count, was required to reduce the overall sentence, which it did by removing all of the portions of the sentence that were related to the 924C count. And that includes the special assessment. And all of that, that the District Court was grappling with at the time of the sentencing hearing, was considering how that was a reduction in the defendant's overall sentence. But when the case came back down, the conduct was still the same. And so the District Court was still dealing with nothing had changed other than the fact that that particular count was removed. And under those circumstances, it was a reduction in sentence in accordance with the mandate. So Counsel, I just want to ask you something, because I think the government's actually done everything right in this case. You guys did not write that language in the Ninth Circuit's opinion. And now you don't have to comment. That's right. And now you have to deal with it. And I think you did the right thing by asking the sentence of 208 months. I would have done the same thing. But now we are where we are. And if you're Mr. Baker, and Counsel says, Mr. Baker, I've got great news. Not only did you win the 924C count, but you're going to get a reduction in sentence. And he says, great. And that means you don't have to pay that $100 special assessment. Is that what all this litigation has been over is about a $100 special assessment? Again, you didn't create this. I want to be clear. You've inherited this. From their perspective, I'm trying to get a sense of why was all the litigation done in a published Ninth Circuit decision to have a brandishing 924C, big boy 924C, for a $100 special assessment. It seems to me it's hard for me to get at. Can you find any cases that would help us get to the idea that the $100 special assessment qualifies as a reduction in sentence? Specific cases, I think what the Ninth Circuit is typically dealing with are things like mootness related to special assessments still applying, or just generally those being portions of the judgment and commitment order. If not a part of the sentence, then what is the special assessment? And I think that's why both parties have not raised the issue that this is not a part of the sentence, because it clearly is. There's no other reason to apply the special assessment. And I think going along those lines of Mr. Baker's feelings about it, he would probably be equally upset if the district court had just reduced his sentence by a day, his custodial term of his sentence. And so without further guidance in that mandate saying that it needed to be the custodial term, the district court was well within its rights to do this. And it is something that I'm happy to do some more research and provide additional authorities to the court, but the special assessment just at face value is a portion of it. No, the mootness case is where I would have gone. I mean, you're right. We do have cases that say this case is not moot because there's a special assessment still involved. So I think that's your best, I don't think we need to see any 28-Js. I think that is your best argument on this one. It's just a question of, we always have these mandate issues, as you know, they go back to the district court. And in a way, it's an open season because you're supposed to do something special, but actually the whole issue is back in front of the district court. So these mandate issues do perplex the district court, I think, and then they perplex us after the fact, because as I say, we're not the authors of that particular opinion. So we're just trying to unscramble the words. I think the district court did, in the sentencing transcript, discuss whether or not this would be in compliance. I discussed it in my sentencing memorandum as well. It is in compliance with both the literal term and what I think is a fair reading of what the Ninth Circuit meant at the time that it issued that opinion. And briefly turning to the gun violence issue, I think that as a general matter, this wasn't something that was a clear or obvious error that the district court made by raising these. Specifically, this did not come up in the first sentencing, but the district court did say that a sentence below 209 months would trivialize the nature and circumstances of the offense. And then when defense counsel on remand filed its sentencing recommendation, the district court again said that that sentencing recommendation trivialized this offense. And that's at page 29 of the record. And I think that all of this discussion about gun violence was specifically in response to the fact that the district court needed to explain why it was so concerned about gun violence, what the prevalence was. And I think that makes it not a clear or obvious error, but certainly not a prejudicial one, in that the court sentenced the defendant to the exact same term when it didn't discuss those statistics that were at issue. And under those grounds, I don't think that the defense can show plain error. And unless the court has any further questions for me, I would ask that this court affirm. Very well, counsel. Thank you very much. I appreciate the extra time. I'll try to be brief. I think I understand the government's argument for why reducing the special assessment by $100 technically complies with the terms of the mandate. I disagree, but I understand it. But it's not just the language of the mandate that matters. This court has held that the district court may not take an action on remand that is counter to the spirit of the circuit court's decision. And so I think that when the court invalidated the 924C conviction and ordered the district court to reduce the sentence, that the spirit of that decision was something more than just reducing the $100 special assessment. I think on the second point, certainly the district judge gave other reasons for imposing a high-end guideline sentence. He was actually wrong about Mr. Baker's criminal history. He said that he had been convicted of three robberies previously. That wasn't true. There was only one. Mr. Baker had a wealth of mitigation evidence, not just about his childhood, but he also had been doing extraordinarily well in prison in the time between his original sentencing and resentencing. So it's not a given that if the court hadn't relied on this other information about more egregious forms of gun violence, that he would have given Mr. Baker the same high-end sentence. Thank you very much, counsel. Again, thanks to both of you for your very good arguments and briefing in this very interesting case. So law clerks, just remember when you're writing opinions, words matter. So this matter is submitted.
judges: WALLACE, McKEOWN, OWENS